[Cite as *In re T.D.H.*, 2018-Ohio-5277.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: T.D.H. | : | Appellate Case No. 27999 |
|  | : | Trial Court Case No. 2018-1113 |
|  | : | (Appeal from Common Pleas Court - Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of December, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JAMES S. ARMSTRONG, Atty. Reg. No. 0020638, P.O. Box 20368, Dayton, Ohio 45420
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} T.D.H. was adjudicated delinquent in the Warren County Court of Common Pleas, Juvenile Division, on one count of rape and one count of gross sexual imposition. After transfer to the Montgomery County Court of Commons Pleas, Juvenile Division, for disposition, the juvenile court committed T.D.H. to the Department of Youth Services (DYS) for a minimum of 12 months, all of which were suspended, and placed T.D.H. on probation with several conditions. T.D.H. was designated a Tier I sex offender. T.D.H. appeals from his adjudications, claiming that his adjudications were against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 3} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of

particular witnesses. *State v. White*, 2018-Ohio-3076, __ N.E.3d __, ¶ 38 (2d Dist.), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 4} T.D.H. was charged with rape, in violation of R.C. 2907.02(A)(1)(b), and gross sexual imposition, in violation of R.C 2907.05(A)(4). R.C. 2907.02(A)(1)(b) (rape) provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" means "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 5} R.C. 2907.05(A)(4) (gross sexual imposition) states: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a

female, a breast, for the purpose of sexually arousing or gratifying either person."   R.C. 2907.01(B).

{¶ 6} The State presented three witnesses at T.D.H.'s trial: the complainant and her parents.   The complainant, D.V., was six years old when the offenses occurred and eight years old when the bench trial was held.   The State's evidence established the following facts.

{¶ 7} In January 2016, T.D.H.'s mother had a serious health issue that required someone else to assist in T.D.H.'s care.   Montgomery County Children Services placed 13-year-old T.D.H. in the complainant's home, because D.V.'s mother was a close friend of T.D.H.'s mother.   At that time, six-year-old D.V. lived in Mason, Ohio, with her parents and two teenaged sisters.

{¶ 8} One afternoon in late March or April 2016, T.D.H. and D.V. were in the basement together, playing basketball with a hoop mounted on a door.   While they were playing, T.D.H. came up behind D.V., put his hand over her mouth, and told her not to scream.   T.D.H. then let go, and D.V. screamed.   T.D.H. covered her mouth again.   D.V. testified, "he had pulled my pants down and he tried to – he was, um, touching my inappropriate spots."   (Tr. at 25.)   When asked to identify her "inappropriate spots," D.V. circled the pubic area on a drawing of the front of a girl's body, and stated that she called that area her "private part."   (Tr. at 26.)   D.V. stated that T.D.H. was "trying to touch like the inside" with his fingers; his other hand still covered her mouth.   (Id. at 27.)   When asked to clarify T.D.H.'s behavior toward her, D.V. stated that her clothes had remained on and that T.D.H.'s hand was on the inside of her underwear.   D.V. stated that she "felt his fingertips like on the inside" of her "inappropriate spot."

{¶ 9} D.V. bit T.D.H.'s hand and told T.D.H. to stop, that she needed to use bathroom, and to let her go. T.D.H. released her. T.D.H. told D.V. that no one would believe her if she told and that she had to come right back downstairs. D.V. went upstairs and told her father "half of the story" – that T.D.H. had tried to pull her pants down. D.V. testified that she did not tell her father the complete story because she was afraid she would not be believed. D.V.'s mother was not home when the incident occurred. D.V. testified that, a day or two later, she told her mother "most of the story" – that T.D.H. had pulled her pants down and tried to touch her. D.V. testified that she ultimately told her mother everything that had occurred.

{¶ 10} D.V.'s father testified that he was asleep in the living room when he heard D.V. calling him. He went to the top of the basement stairs and asked D.V. what was wrong. D.V. came running upstairs and told him that T.D.H. had tried to pull her pants down. D.V.'s father testified that D.V. had a worried look on her face.

{¶ 11} D.V.'s father talked to T.D.H. and asked him what he was trying to do. T.D.H. responded that he and D.V. were playing. D.V.'s father told T.D.H., "Don't put your hands on her again, especially in that manner. And if it happens again, you [sic] out of here." D.V.'s father did not tell D.V.'s mother about the incident when she returned a couple of hours later.

{¶ 12} D.V.'s mother testified that she was not home when the incident occurred. After D.V. first talked to her about it, she contacted T.D.H.'s caseworker and asked for T.D.H. to be removed. T.D.H. was removed from the family's home a couple days later.

{¶ 13} D.V.'s mother testified that D.V. was "a different kid" after T.D.H. left their home. She indicated that D.V. was having "accidents" and looking at sexually-

inappropriate animated videos on her tablet. (D.V.'s father testified that D.V.'s academic performance dropped, but D.V.'s mother testified that it did not.) Around May 2017, D.V.'s mother questioned D.V., trying to learn the cause of her changed behavior. D.V. cried and revealed additional information about what had occurred with T.D.H. At that time, D.V.'s mother contacted the police.

{¶ 14} T.D.H. did not testify or present any witnesses on his behalf. After closing arguments, the Warren County Juvenile Court, as the trier of fact, adjudicated T.D.H. a delinquent child based on both rape and gross sexual imposition.

{¶ 15} On appeal, T.D.H. argues that there were inconsistencies in D.V.'s testimony, as well as inconsistencies in D.V.'s initial reporting to her parents, which he claims undermined her credibility. He emphasizes that D.V.'s initial disclosures to her parents did not claim that T.D.H. had touched her inside her body, and that she did not make those allegations until a year after the incident. T.D.H. also argues that D.V. testified inconsistently, such as when she said that T.D.H. had pulled down her pants and other times that her clothes were on.

{¶ 16} In reaching its verdict, the juvenile court, as the trier of fact, was free to believe all, part, or none of each witness's testimony and to draw reasonable inferences from the evidence presented. *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. Credibility determinations, perhaps especially involving the testimony of young children concerning sexual abuse, can be extremely difficult for the trier of fact. Nevertheless, it was the province of the trier of fact to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that T.D.H. had committed the charged offenses. *State v. Powell*, 2d Dist. Montgomery No. 27951, 2018-Ohio-

4693, ¶ 32.

{¶ 17} Here, the judge, as the trier of fact, found "beyond any doubt" that the State had proven all of the elements of both offenses. In rendering its verdict, the court explained:

* * * The Court has had a chance to listen to the, uh, testimony that was presented, as well as the exhibit that's been admitted into evidence. One thing that's clear, I did not need to be told by mom that she was a gifted little girl, because I don't think I've ever listened to someone that was so astute at such a young age. Uh, it's like she's eight going on 20 in the next couple months. I not only found her competent at the beginning of the trial, but I also found her incredibly, uh, credible.

As I listened to the testimony, it became clear to me, um, and it's not just beyond a reasonable doubt, it's beyond any doubt that the State has met all of its burden on the essential elements for rape, because I did hear the testimony that he had placed his hands inside her pants and it was against her skin underneath her underwear wherein she felt his fingertip on her inside, which meets all of the elements of rape, and as such, it would also fit the definition of sexual contact, uh, of having contact with her pubic region which, again, qualifies for all the essential elements for gross sexual imposition.

{¶ 18} Upon review of the evidence, the juvenile court reasonably concluded that T.D.H. had committed rape and gross sexual imposition. The trial court found D.V. to be credible, and based on her testimony, the trial court could have reasonably found that

T.D.H. grabbed her from behind, put his hand down into D.V.'s underwear, and touched D.V. with his fingers inside D.V.'s vagina. With the record before us, we cannot conclude that the juvenile court lost its way when it adjudicated T.D.H. delinquent on both charges.

{¶ 19} T.D.H.'s assignment of error is overruled. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and HALL, J., concur.


Copies sent to:

Mathias H. Heck
Michael J. Scarpelli
James S. Armstrong
Hon. Jeffery S. Rezabek